[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 40 
The appellant, Robert Joseph Proctor, appeals from his two convictions for sexual abuse in the second degree, a violation of § 13A-6-67, Ala. Code 1975. He was sentenced to six months' imprisonment in the Prattville city jail and was fined $500 on each conviction.
The evidence presented by the City tended to show the following: During the 1998-1999 school year, the appellant, a teacher and a coach at Prattville High School, sexually abused two high school students, ages 14 and 15. Each student testified that the appellant rubbed her calves, thighs and private area. He also kissed them, rubbed their breasts, and allowed one of the students to fondle his penis. All of the incidents occurred either in the hallway or in the appellant's classroom. The City also presented the testimony of a former student who testified that when she was 17 years old she had a consensual relationship with the appellant; that relationship, she said, began at school, under the same circumstances, and *Page 41 
culminated in an off-campus affair involving sexual intercourse. This testimony was verified by several witnesses, including another former student who testified that the appellant had admitted to the relationship. Evidence was presented that, after being arrested on the sexual abuse charges, the appellant admitted to having had sexual contact with the students, but stated that he did not report it because he wanted to protect them.
 I.
The appellant contends that the trial court erred in allowing the State to present evidence of a prior collateral bad act, for the sole purpose of suggesting that he was more likely to be guilty of the crimes he was charged in this case with committing. He contends that the admission of collateral evidence of a previous consensual relationship between him and a 17-year-old student, which involved sexual intercourse, resulted in a "trial within a trial," and, therefore, that the probative value of that evidence was substantially outweighed by the danger of unfair prejudice. In support of his argument, he contends that the incident that culminated in his having sexual intercourse with a student was not similar to the charged offenses of sexual abuse.
Rule 404(b), Ala.R.Evid., provides, in pertinent part:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."
A trial judge should exclude evidence falling within one of the exceptions listed in rule 404(b) only if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. See Ex parte Register, 680 So.2d 225 (Ala. 1994).
Under the general exclusionary rule in Rule 404(b), a prior act of sexual abuse would be inadmissible. However, in this case, the alleged prior bad act was offered to prove motive.
 "`Motive is defined as "an inducement, or that which leads or tempts the mind to do or commit the crime charged." Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has been described as "that state of mind which works to `supply the reason that nudges the will and prods the mind to indulge the criminal intent.'" [Charles Gamble, Character Evidence: A Comprehensive Approach 42 (1987).]
 "`Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067 (Ala.Cr.App. 1986). "`It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.' McAdory v. State, 62 Ala. 154
[(1878)]." Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921).'"
Hatcher v. State, 646 So.2d 676, 679 (Ala. 1994), quoting Bowdenv. State, 538 So.2d 1226, 1237 (Ala. 1988).
In determining whether evidence of a collateral act of sexual abuse is admissible to prove motive, the trial court must consider the following factors: "`(1)the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial; and (4) the other purpose(s) for which it is offered.'" Campbell v. State, 718 So.2d 123, 130 *Page 42 
(Ala.Crim.App. 1997), quoting Bowden, 538 So.2d 1237.
Although the charged offenses and the collateral sexual offense were not identical, the circumstances surrounding the offenses were virtually identical, i.e., all of the victims were females; the inappropriate touching began at school and evolved from a teacher/student relationship; all of the victims experienced the same type of inappropriate touching, while under the appellant's control in his classroom, or in a hallway at the school. Here, the City offered evidence of the collateral offense in order to establish that the appellant acted in conformity on this particular occasion, and therefore, to establish his motive in committing the charged offenses. Moreover, it is well settled that a collateral act of sexual misconduct need not match precisely the charged offense in order for evidence of the collateral act to be admissible. See Smith v. State, 745 So.2d 284, 290 (Ala.Crim.App. 1998); Register v. State, supra.
Based upon an examination of the record, we hold that the probative value of the evidence of the collateral offense outweighed its prejudicial effect. Therefore, the trial court did not abuse its discretion in admitting evidence of the collateral offense.
 II.
The appellant contends that the trial court erred in denying his motion for a mistrial, made on grounds that the prosecutor made improper remarks during his opening statement and that those remarks were highly prejudicial to his case.
The following statements by the prosecutor formed the basis of the appellant's objections:
 "[Prosecutor]: I think it is better to refer to him as a predator rather than a teacher.
 "[Defense Counsel]: Your Honor, we object and move for a mistrial. It is very argumentative. This is opening statements.
"[The Court]: Okay.
"[Prosecutor]: He no longer deserved the title of teacher.
 "[Defense Counsel]: Your Honor, that is prejudicial. We ask for a mistrial.
 "[The Court]: Overrule. [Prosecutor], let's move on. Gentlemen, would y'all both come here just a minute."
When an accused contends that a prosecutor has made improper comments, the comments at issue must be viewed in the context of the entire opening statement. See Frazier v. State, 758 So.2d 577, 602 (Ala.Crim.App. 1999). Unfortunately, we are unable to review the entire opening statement because it was not made a part of the record. Contrary to the appellant's contention, however, we do not believe that the prosecutor's comments were intended to inject irrelevant or prejudicial information into the trial. The prosecutor was merely setting forth what he expected the evidence to establish, i.e., that the appellant was a "predator" of young girls and had caused emotional injury and destruction. See McKinneyv. State, 654 So.2d 95, 98 (Ala.Crim.App. 1995) ("The purpose of opening statements is for each party to give the jury an overview of what the evidence will show"). Moreover, we cannot say from our limited review of the record that the trial court abused its discretion in denying the motion for a mistrial. See Ex parte Thomas, 625 So.2d 1156, 1157 (Ala. 1993) ("A mistrial is a drastic remedy to be used only sparingly and only to prevent manifest injustice and the decision of whether to grant a motion for a *Page 43 
mistrial rests within the sound discretion of the trial court").
 III.
The appellant contends that the trial court abused its discretion in denying his motion for a mistrial, or, in the alternative, his motion to strike the venire panel, on grounds that the jury venire was tainted because one of the jurors, who ultimately sat on the jury, was the grandfather of a hostile witness.
The record indicates that on the day of trial, a day after he was placed on the jury, a male juror approached the bailiff and stated that he might be related, as a grandfather by marriage, to a witness. After defense counsel objected to the juror's serving on the jury, the prosecutor responded that the juror was uncertain whether he was still married to the witness's grandmother because they had had no contact with each other for a long time. Additionally, he was not sure if he knew the witness. The trial court then gave defense counsel the option of leaving the male juror on the jury, or replacing him with the alternate female juror. Upon defense counsel's request, the male juror was replaced by the female juror.
Although a defendant has a right to have prospective jurors answer questions truthfully, the failure of a juror to make a proper response to a question regarding his qualifications does not automatically entitle a defendant to a new trial. The proper inquiry by this Court in such cases is whether the appellant's rights were prejudiced by the juror's failure to respond. In Knight v. State, 675 So.2d 487 (Ala.Crim.App. 1995), this Court reviewed the factors applied by a trial court to aid it in determining probable prejudice:
 "`"Although the factors upon which the trial court's determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: [1] temporal remoteness of the matter inquired about, [2] the ambiguity of the question propounded, [3] the prospective juror's inadvertence or willfulness in falsifying or failing to answer, [4] the failure of the juror to recollect, and [5] the materiality of the matter inquired about."
675 So.2d at 495 (emphasis omitted).
An examination of the record reveals that the appellant has failed to show that he suffered any prejudice from the juror's failure to respond during voir dire. As to the first consideration listed in Knight v.State, it is apparent that the matter inquired about was remote — the juror was unsure if the witness was, in fact, a relative by marriage and he had had no contact with her — therefore, his role as a juror was not tainted. As to the second consideration, the record shows that the questions asked of the prospective jurors were not ambiguous, although the trial court, for reasons not indicated by the record, admonished defense counsel that the next time he defended a case, he needed to ask "different questions" on voir dire examination. As to the third and fourth considerations, it appears that the juror inadvertently and unknowingly withheld information during voir dire. There is nothing in the record to indicate that his response, or failure to respond, was intentional. Lastly, there was no evidence presented that the juror's possible relationship with the witness was material to the case.
 IV.
The appellant contends that the trial court abused its discretion in denying his motion made pursuant to Batson v. Kentucky, 476 U.S. 79
(1986). Batson was extended *Page 44 
by J.E.B. v. Alabama, 511 U.S. 127 (1994), to prohibit gender-based discrimination in jury selection. More particularly, the appellant contends that the City improperly used three of its peremptory challenges to remove three black male jurors, not because they were black, but because they were males.
The record indicates that the prosecutor informed the trial court that he struck one of the males because of his marital status, i.e., he was single. The record further indicates that the appellant was also single. "Striking a prospective juror because of his or her marital status may be a sufficiently race-neutral reason if the juror's marital status is related to the case." Adkins v. State, 639 So.2d 515, 518
(Ala.Crim.App. 1993). Additionally, the prosecutor informed the trial court that the other two males were struck "on their merits." The trial court then denied the Batson motion.
In J.E.B.v. Alabama, 511 U.S. 127, 145-46, 114 S.Ct. 1419, 1430,128 L.Ed.2d 89 (1994), the United States Supreme Court, holding that the prosecution had discriminatorily used 9 of its 10 peremptory challenges to remove male jurors on the basis of gender, stated:
 "Equal opportunity to participate in the fair administration of justice is fundamental to our democratic system. It not only furthers the goals of the jury system. It reaffirms the promise of equality under the law — that all citizens, regardless of race, ethnicity, or gender, have the chance to take part directly in our democracy. Powers v. Ohio, 499 U.S. [400] at 407 [111 S.Ct. 1364, 1368-69, 113 L.Ed.2d 411 (1991)] (`Indeed, with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process'). When persons are excluded from participation in our democratic processes solely because of race or gender, this promise of equality dims, and the integrity of our judicial system is jeopardized.
 "In view of these concerns, the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man. As with race, the `core guarantee of equal protection, ensuring citizens that their State will not discriminate . . ., would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' [gender].' Batson, 476 U.S. at 97-98
[106 S.Ct. at 1724]."
In the instant case, the prosecutor's explanation for its striking of two of the three male veniremembers, i.e., that they were struck "on their merits," is subject to abuse because it cannot be objectively evaluated by the trial court. See Ex parte Bird, 594 So.2d 676, 685
(Ala. 1991). The record contains no indication of any previous statements or answers by these jurors that would explain the prosecutor's strike. Additionally, the prosecutor's explanations fail the Batson requirement that the explanations be "clear, specific, and legitimate." See Ex parteBranch, 526 So.2d 609, 624 (Ala. 1987).
Because the record does not contain any evidence tending to show that the explanations given by the prosecutor for his strikes against male venire members are facially valid, this cause is remanded to the trial court for the State to have an opportunity to present gender-neutral explanations for its strikes of the male veniremembers. Return shall be made to this *Page 45 
court within 45 days of the release of this opinion.
REMANDED WITH DIRECTIONS.
Cobb and Baschab, JJ., concur. Shaw and Wise, JJ., concur in the result.