The appellant, Franklin Garner, was convicted of first-degree sodomy, a violation of § 13A-6-63(a)(3), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to serve a term of life in prison. See
§ 13A-5-9(b)(3), Ala. Code 1975. It also imposed an additional ten-year period of post-conviction supervision pursuant to § 13A-5-6(c), Ala. Code 1975. The appellant did not file any post-trial motions. This appeal followed.
The victim, K.H., testified that, in 1993, when she was eleven years old, she and her family lived in a house on Chestnut Street in Prattville for about six months; *Page 535 
that, on one occasion in 1993, she was sleeping on a cot under a window; and that she woke up and found her underwear around her knees and a man "using his mouth" on her genitals. (R. 20.) She also testified that the man whispered, "`I'm going to lick your bosoms'"; that she screamed; that the man left through the bedroom window; and that she did not tell anyone what the man had done to her because her mother was having mental problems and she thought her mother and her entire family would go crazy if she told anyone. (R. 20.) The victim told her mother that a man had been in her room; her mother checked the room, but did not see anything; and her mother calmed her down and told her it was just a dream.
The State presented evidence that, a few weeks later, on November 18, 1993, the victim was sleeping in the same room in a different bed; that she woke up and saw a man standing at the foot of her bed; and that she asked the man who he was and if he was her uncle. The man said, "`Shhh' . . . `No, be quiet . . . It's okay'"; approached the victim; touched her; and tried to pull down her underwear. The victim ran to her mother's room and said, "`Mom, there's a man in my room again.'" (R. 24, 26.) The State also presented evidence that the victim's mother went into the victim's bedroom and saw that the curtains had been knocked down onto the floor and that she went to the front door, opened it, and saw a white man run off of the porch and to a vehicle. The next day, the victim's mother contacted law enforcement authorities, and the appellant was arrested later that day. The victim's mother testified that, when she saw the appellant, she remembered that she had previously seen him at the city swimming pool when she was there with the victim and her other children and that, on a couple of other occasions, she had seen the appellant walking up and down the sidewalk across the street from their house. Finally, the State presented evidence that the appellant pled guilty to second-degree burglary based on the November 18, 1993, incident.
A.H. testified that, in 1986, when she was between seven and eight years old, she and her family lived in a house in Prattville. She also testified that, one night in 1986, she was sleeping in her room; that her sister and three-year-old brother were also in the room; that she woke up, felt something wet between her legs, and saw the appellant on top of her; that the appellant was touching her and "doing other things to [her]"; that she kicked him off of her and got out of the bed; that the appellant reached down and touched her sister; that her sister screamed; and that the appellant ran to the window and left. (R. 56.) A.H. further testified that she told her mother what had happened; that the appellant was her babysitter's boyfriend and had been to her house before; that law enforcement officers came to her house that night, she told them the appellant's name, and they later brought the appellant back to her house; that the appellant said, "`Did I do this, sweety-pie'? . . . `Did I do this to you?'"; and that the appellant also called her "a little f ___ bitch" and told her he was going to kill her. (R. 58.) Finally, she testified that, when she was around twelve years old, the appellant pled guilty to charges that were filed based on that incident.
T.K. testified that, in 1976, when she was fourteen years old, she lived in Prattville; that the appellant lived across the street from her; and that she went to school with him. She also testified that, on one occasion, she and her sister were sleeping in their second-floor bedroom; that she felt her covers come off of her, and she pulled them back up; that, a few *Page 536 
minutes later, her covers came off of her again; that she woke up and saw the appellant standing at the foot of her bed; that she told the appellant to get out of her room; and that the appellant left through her bedroom window.
Investigator Tom Allen of the Prattville Police Department testified that the appellant's date of birth was December 27, 1961, and that he was thirty-one years old in November 1993. He also testified that the addresses for each of the three incidents were all in the downtown area of Prattville; that he showed two different addresses for the appellant; and that the addresses were within walking distance of the area where the incidents occurred.
 I.
The appellant argues that the trial court erroneously admitted evidence about his prior bad acts.
 A.
Initially, the appellant contends that the admission of evidence regarding his prior bad acts violated Rule 404(b), Ala. R. Evid., because the evidence was not relevant and "had only a tendency to suggest that he was more likely to be guilty because of his past misdeeds." (Appellant's brief at p. 14.)
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
Rule 404(b), Ala. R. Evid.
 "A trial judge should exclude evidence falling within one of the exceptions only if the probative value is substantially outweighed by the danger of unfair prejudice. See Ex parte Register, 680 So.2d 225 (Ala. 1994).
 "Ordinarily, a prior act of sexual abuse would be inadmissible under Rule 404(b). However, in this case, the alleged prior bad act was offered for the specific purpose of proving motive. (R. 24, 28.)
 "`"Motive is defined as `an inducement, or that which leads or tempts the mind to do or commit the crime charged.' Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has been described as `that state of mind which works to "supply the reason that nudges the will and prods the mind to indulge the criminal intent."' [Charles Gamble, Character Evidence: A Comprehensive Approach 42 (1987).]
 "`"Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067
(Ala.Cr.App. 1986). `"It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense." McAdory v. State, 62 Ala. 154
[(1878)].' Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921)."'
 "Hatcher v. State, 646 So.2d 676, 679
(Ala. 1994) (emphasis added).
 "In determining whether evidence concerning a collateral act of sexual *Page 537 
abuse is admissible to prove motive, we must consider the following factors: `"(1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial, and (4) the other purpose(s) for which it is offered."' Campbell v. State, 718 So.2d 123, 130
(Ala.Cr.App. 1997), quoting Bowden v. State, 538 So.2d 1226, 1237 (Ala. 1988)."
Estes v. State, 776 So.2d 206, 210-11
(Ala.Crim.App. 1999).
In this case, the prior acts were substantially similar to the acts that formed the basis for the instant offense. The victim, A.H., and T.K. all testified that they woke up during the middle of the night to find the appellant in their rooms. The victim testified that, when she woke up, the appellant's mouth was on her genitals. A.H. testified that, when she woke up, she felt something wet between her legs and that the appellant was touching her and "doing other things to [her]." (R. 56.) Although the evidence did not indicate that the appellant sodomized or sexually abused T.K., she testified that, when she woke up, she felt the covers coming off of her and that the appellant left after she told him to get out of her room. Further, the victim, A.H., and T.K. all testified that the appellant left their houses through their bedroom windows.
The State also presented evidence that the victim's mother had previously seen the appellant at the city pool when she was there with the victim and had previously seen the appellant walking up and down the sidewalk across the street from their house. Further, both A.H. and T.K. testified that they knew the appellant before the incidents in their rooms. Finally, the State presented evidence that, at the time of the various incidents, the victim, A.H., and T.K. all lived in the downtown area of Prattville and that the appellant's addresses were within walking distance of the area where the incidents occurred.
Based on the evidence presented, the testimony of A.H. and T.K. was relevant to show the appellant's unnatural sexual desire for young girls and to show his pattern of entering young girls' bedrooms during the middle of the night.
To the extent the appellant contends that the trial court erroneously allowed the State to present evidence regarding his second-degree burglary conviction that arose from the November 18, 1993, incident, his argument is without merit. The victim testified that, when the man spoke to her during the November incident, she recognized his voice; that that man was the same man who had told her he was going to lick her bosoms during the incident that formed the basis for this offense; that she was able to see the man during the November incident; and that that man was the appellant. Therefore, the identity of the man who was in her room on November 18, 1993, was relevant to prove the identity of the man who was in her room during the first incident. The fact that the appellant pled guilty to second-degree burglary with respect to the November incident was relevant to prove that he was the person who had entered the victim's room during the November incident. Therefore, it was also relevant to prove his identity with regard to the first incident, which formed the basis for his sodomy conviction in the present case.
Because the evidence about the collateral bad acts was relevant to show the appellant's motive, pattern of conduct, and identity, the trial court properly admitted evidence about the collateral bad acts. *Page 538 
 B.
The appellant also contends that the trial court should have excluded the evidence about his collateral bad acts pursuant to Rule 403, Ala. R. Evid., because the probative value of the evidence was substantially outweighed by the prejudicial effect of the evidence. However, he did not present this specific argument in his motion in limine or when the evidence was admitted at trial. Therefore, this argument is not properly before this court. See Miller v. State, 602 So.2d 488,496 (Ala.Crim.App. 1992) (holding that `"[t]he statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.' Ex parte Frith, 526 So.2d 880, 882
(Ala. 1987)").
 II.
The appellant also argues that, during her closing argument, the prosecutor improperly commented on the fact that he did not testify. However, he did not immediately object to the comment about which he now complains. Rather, he raised this argument for the first time when he moved for a mistrial after the trial court had instructed the jury and the jury had started its deliberations. To be timely, a motion for a mistrial must be made immediately after the grounds for the motion become apparent. See Butler v. State, 659 So.2d 1021
(Ala.Crim.App. 1995). Because the appellant did not move for a mistrial immediately after the prosecutor's comment, that motion was not timely. Therefore, he did not properly preserve this argument for our review.
Also, the record does not include a transcript of the closing arguments. Rather, it includes only the appellant's motion for a mistrial and his summary of the prosecutor's statement.
 "We review the argument as a whole to determine if any part is prejudicial and violative of the appellant's rights. `It is the appellant's duty . . . to make a correct and complete record on appeal.' Holder v. State, 584 So.2d 872, 875 (Ala.Cr.App. 1991)."
Allen v. State, 611 So.2d 1152, 1155
(Ala.Crim.App. 1992). Because the record before us does not include a copy of the closing arguments, we cannot review the prosecutor's comment in the context of the entire closing arguments. Therefore, we cannot properly review the appellant's argument.
 III.
Finally, the appellant argues that "[t]he trial court abused its discretion in ordering [him] to probation for ten (10) years beyond the maximum allowed under Alabama law." (Appellant's brief at p. 19.) Specifically, he contends that the trial court sentenced him to serve a term of life in prison and that the ten-year period of probation exceeds the maximum period of probation set forth in § 15-22-54, Ala. Code 1975. The record indicates that the trial court did not place the appellant on probation pursuant to §§ 15-22-50 through15-22-56, Ala. Code 1975. Rather, it ordered that he serve "an additional ten years of post-release supervision in the event that you ever get released, pursuant to section 13A-5-6(c)." (R. 106.)
Section 13A-5-6(c), Ala. Code 1975, provides:
 "In addition to any penalties heretofore or hereafter provided by law, in all cases where an offender is designated as a sexually violent predator pursuant to Section 15-20-25.3, or where an offender is convicted of a Class A felony criminal sex offense involving a child as defined in Section 15-20-21(5), and is sentenced to a county jail or the Alabama Department *Page 539 
of Corrections, the sentencing judge shall impose an additional penalty of not less than 10 years of post-release supervision to be served upon the defendant's release from incarceration."
This section became effective on October 1, 2005. However, the offense in this case occurred in 1993, before the effective date of § 13A-5-6(c), Ala. Code 1975. "A defendant's sentence is determined by the law in effect atthe time of the commission of the offense." Davis v.State, 571 So.2d 1287, 1289 (Ala.Crim.App. 1990). Because § 13A-5-6(c), Ala. Code 1975, was not in effect at the time the appellant committed the offense in this case, the trial court erroneously imposed the ten-year period of post-release supervision provided for in that section.
For the above-stated reasons, we affirm the appellant's first-degree sodomy conviction. However, we remand this case to the trial court with instructions that it set aside the ten-year period of post-release supervision it imposed. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 42 days after the release of this opinion. The return to remand shall include the trial court's amended sentencing order and, if applicable, a transcript of the remand proceedings.
AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS IN PART.*
McMILLAN, SHAW, WISE, and WELCH, JJ., concur.
* Note from the reporter of decisions: On June 22, 2007, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On July 13, 2007, that court denied rehearing, without opinion.