REL: FEBRUARY 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

────────────────────

### CR-2022-0543

────────────────────

## Michael Carvese Williams

### v.

### State of Alabama

## Appeal from Jefferson Circuit Court, Bessemer Division (CC-16-665, CC-16-666, CC-16-667, CC-16-668, CC-16-669, CC-16-670, CC-16-671, CC-16-672, and CC-16-673)

KELLUM, Judge.

The appellant, Michael Carvese Williams, was convicted of two counts of rape in the first degree, see §13A-6-61, Ala. Code 1975; three counts of the sexual abuse of a child under the age of 12, see § 13A-6-69.1, Ala. Code 1975; two counts of sodomy in the first degree, see § 13A-6-63,

Ala. Code 1975; one count of enticing a child for immoral purposes, see § 13A-6-69, Ala. Code 1975; and one count of facilitating the travel of a child for an unlawful sexual act, see § 13A-6-125, Ala. Code 1975.[1] The circuit court sentenced Williams to 20 years in prison for each rape conviction, 10 years in prison for each sexual abuse conviction, 20 years in prison for each sodomy conviction, 10 years in prison for the enticing conviction, and 10 years in prison for the facilitating conviction. The circuit court ordered that the sentences run concurrently with the exception of the sentences for the rape convictions, which the court ordered were to run consecutively.

Williams does not challenge the sufficiency of the evidence to support any of his convictions, thus, we give only a brief rendition of the facts presented at trial. A.W. testified that at the time of trial she was 18 years old.[2] In the summer of 2015, A.W. was 11 years old and was living with her mother, stepfather, and her brothers in Edgewater. (R. 272.) Williams was her stepfather's brother and would often visit when

---

[1]The State moved that the nine charges be consolidated; Williams did not object and that motion was granted. (R. 3.)

[2]Pursuant to Rule 52, Ala. R. App. P., we are using the victim's initials.

her parents were not at home. The first time he touched her, A.W. said, Williams "put [her] hand in his private area and made [her touch him]. Once stuff started coming out, that is when he stopped." (R. 276-77.) At this time, she said, Williams told her that if she told anybody he was "going to kill my momma and my stepdad." (R. 282.)

In another instance, she said, she was in her room and Williams came in and tried to make her watch pornography on his cellular telephone. "[Williams] told me to look at a couple of videos to show me how to do the nasty. So, he -- I didn't want to watch the video. I told him no. So, he put his phone back up. After that, he put me on my bed and he pulled my pants down. He tried to eat my stuff [her privates, she explained] but [she] wouldn't let him." (R. 278.) A.W. said that he then put his penis in her butt but "pulled it out and then he stopped." (R. 279.)

Another time, A.W. said, her mother and stepfather were getting ready to go out and Williams was going to go with them. She said that Williams came back and told her to go into the living room and get on the couch. A.W. testified: "When I laid down, he told me he isn't going to stick it in too far because he didn't want to pop my cherry." (R. 284.) A.W. said that he put his penis in her vagina and that she told him to

3

stop because it hurt and that he stopped once "the white stuff came out." (R. 285.) She said that she bled and went to the bathroom to clean herself.

The last time, A.W. testified, Williams took her to a park late at night. A.W. testified: "Cars were flying by -- passing by. So he turned around and we got back in the car. And once we got in the car, he tried to put his hands in my pants. And he used his fingers but he didn't stick his fingers all the way in me. He rubbed my -- my private." (R. 289.)

A.W. testified that her grandmother was notified by a friend that A.W. had been at a nearby park with an adult man late at night. When her grandmother confronted her, she said, she "just broke down" and she told her family what Williams had done to her. (R. 291.)

The jury convicted Williams of the nine counts charged in the indictment. Williams filed a timely notice of appeal.

## I.

Williams first argues that the circuit court erred in allowing the State to present evidence of prior bad acts pursuant to Rule 404(b), Ala. R. Evid. Specifically, he argues that the circuit court erred in allowing

two witnesses to testify that when Williams was 18 years old he had been arrested and charged with the rape of a 12-year-old.

The record shows that the State filed notice that it intended to present Rule 404(b), Ala. R. Evid., evidence. The notice read that the State intended to present "any incidents of [Williams], being an adult, engaging in sexual intercourse with minors around the age of 11 or 12 years old." (C. 51.) Williams moved in limine that the court bar the State from presenting any Rule 404(b) evidence. He argued that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, that there was no purpose to be served in admitting the evidence, and that the evidence was barred by § 15-19-5, Ala. Code 1975, because, he said, he had been granted youthful-offender status for the prior offense.[3] (C. 157.) This motion was discussed at a pretrial hearing. (R. 5-24.) The following discussion occurred:

> "THE COURT: Next is a motion in limine by the defense. I think this follows a notice of Rule 404(b) evidence by the State. Although the State was not specific in its 404(b) notice of what it intends to offer, the defense in their motion seems

---

[3]Section 15-19-5, Ala. Code 1975, provides, in pertinent part: "No statement, admission or confession made by a defendant to the court or to any officer thereof during the examination and investigation [to determine whether a defendant is treated as a youthful offender] shall be admissible as evidence against him or his interest."

5

to be saying it expects the State to offer the defendant's prior plea of guilty and conviction for youthful offender in an underlying case where the charge is rape in the second degree. Is that what the State wishes to offer?

"[Prosecutor]: In part, Your Honor. But what we actually want to offer is the conduct, not the conviction necessarily, but the conduct to show motive. The State did put in its motion specifically as our 404(b), that [Williams] being an adult involving with sexual intercourse with minors around the age of 11 or 12. It is that conduct to prove motive which is always admissible to show an unnatural attraction for little girls. I have lots of caselaw. If you want him to go first or argue the caselaw showing that the conduct is admissible and not necessarily the adjudication of the case -- not the guilty plea but the conduct of the unnatural attraction to little girls is always admissible to prove motive. That is what we would introduce as 404(b). …

"THE COURT: And how would you do that? How would you introduce it?

"[Prosecutor]: There are various ways you can introduce that testimony; statement by party opponent, his admission to other people about the charges, and of course witness testimony that have been there and have firsthand knowledge of the facts. There are several ways to introduce. We want to be able to present that evidence.

"THE COURT: Would you also have an investigator -- a police investigator testify that they did an investigation of [Williams's] background and found this other case and what happened?

"[Prosecutor]: Potentially, Your Honor. Yes, sir.

"THE COURT: You would elicit that testimony of an investigator?

6

"[Prosecutor]: Investigator, witness or anybody that would have firsthand knowledge or were involved in the investigation or, again, admissions, by a party opponent that he engaged in these actions to other people. "

(R. 5-8.) The circuit court ruled that §15-19-5, Ala. Code 1975, did not "exclude evidence of a youthful offender plea" and that "there is no code section that excludes evidence of a youthful offender plea being admissible for anything other than sentencing." (R. 14.)[4] When asked to further explain how the previous conviction showed motive, the State explained:

"To the issue of motive, motive in the case that we represented to Your Honor, Brownlee v. State, [197 So. 3d 1024 (Ala. Crim. App. 2015),] case is very similar in that the State was trying to introduce prior bad acts or uncharged, actually, victims in the case, that he was charged with rape and it was a similar -- so the motive as defined is an inducement or that which leads or attempts to do or commit the crime. …

"Specifically, in this case -- the caselaw in this case talks about the testimony regarding collateral acts of sexual abuse was admissible to show the defendant's motive, i.e., his unnatural sexual desire for young girls."

---

[4]"An adjudication of youthful offender status may not be considered a prior felony conviction within the meaning of the Habitual Felony Offender Act, § 13A-5-9 et seq." Gordon v. Nagle, 647 So. 2d 91, 95 (Ala. 1994). For a discussion of the use of a prior youthful offender adjudication, see Thomas v. State, 445 So. 2d 992 (Ala. Crim. App. 1984).

(R. 19-20.) The circuit court found that the prior act was admissible to establish motive and that "its probative value is substantial in this case and is not outweighed by the prejudicial effect to [Williams]. (R. 22-23.)

In this case, two witnesses testified concerning Williams's prior rape charges -- Brenda Williams and Captain Jacob Reach. Brenda testified that she is employed at the Jefferson County Department of Human Resources as a supervisor in the Child Abuse and Neglect Unit. (R. 117.) She said that she was involved in the investigation involving A.W. and testified that as part of that investigation she examined Department of Human Resources ("DHR") records to determine if Williams had any prior contact with DHR and that she used the Family, Adult and Child Tracking System. (R. 122.)

> "[Brenda Williams]: I found out that this particular person had a prior investigation in 2002, where this person was indicated for sexual abuse, sexual penetration of a child.
>
> "[Prosecutor]: And what does indicated mean, again?
>
> "[Brenda]: Indicated means that based on our investigation and based on all of the information that we gather; we have enough evidence to prove to the State that what this person did was true."

(R. 134-35.) She further testified that the victim in that case was 12 years old.

8

Captain Jacob Reach testified that he is a captain with the Jefferson County Sheriff's Department and that in July 2002 he was assigned to investigate a case involving Williams and the rape of a 12-year-old girl. (R. 213.) He said that in 2002, Williams was 18 years old. As a result of this investigation, he said, Williams was arrested for rape. (R. 215-17.)

"The decision whether to allow or not to allow evidence of collateral crimes or acts as part of the State's case-in-chief rests within the sound discretion of the trial judge." Blanco v. State, 515 So. 2d 115, 120 (Ala. Crim. App. 1987). When discussing the application of Rule 404(b), Ala. R. Evid., this Court has stated:

> "Rule 404(b), Ala. R. Evid., provides, in pertinent part:
>
> "'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....'
>
> "A trial judge should exclude evidence falling within one of the exceptions listed in rule 404(b) only if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. See Ex parte Register, 680 So. 2d 225 (Ala. 1994).

"Under the general exclusionary rule in Rule 404(b), a prior act of sexual abuse would be inadmissible. However, in this case, the alleged prior bad act was offered to prove motive.

"'"Motive is defined as 'an inducement, or that which leads or tempts the mind to do or commit the crime charged.' Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has been described as 'that state of mind which works to "supply the reason that nudges the will and prods the mind to indulge the criminal intent."' [Charles Gamble, Character Evidence: A Comprehensive Approach 42 (1987).]

"'"Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So. 2d 883 (1942). Accord, Donahoo v. State, 505 So. 2d 1067 (Ala. Cr. App. 1986). '"It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense." McAdory v. State, 62 Ala. 154 [(1878)].' Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921)."'

"Hatcher v. State, 646 So. 2d 676, 679 (Ala. 1994), quoting Bowden v. State, 538 So. 2d 1226, 1237 (Ala. 1988).

"In determining whether evidence of a collateral act of sexual abuse is admissible to prove motive, the trial court must consider the following factors: '"(1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial; and (4) the other purpose(s) for which it is offered."' Campbell v. State, 718 So. 2d 123, 130 (Ala. Crim. App. 1997), quoting Bowden, 538 So. 2d 1237."

10

Proctor v. City of Prattville, 830 So. 2d 38, 41-42 (Ala. Crim. App. 2001).

See also Garner v. State, 977 So. 2d 533 (Ala. Crim. App. 2007); Estes v.

State, 776 So. 2d 206 (Ala. Crim. App. 1999).

Williams first asserts that "[w]hatever motive that may have

existed in Williams's mind in 2002, given the different set of facts and

circumstances between the 2002 incident and the 2015 charged crimes,

did not lie latent for thirteen (13) years only to reappear for a period of

about one month in July and August of 2015." (Williams's brief at p. 21.)

However, this Court has held:

> "'Neither the Alabama Rules of Evidence nor Alabama
> caselaw sets a specific time limit for when a collateral act is
> considered too remote, other than a conviction for
> impeachment purposes.' McClendon v. State, 813 So. 2d 936,
> 944 (Ala. Crim. App. 2001); see also C. Gamble, Gamble's
> Alabama Rules of Evidence, § 404(b) (2d ed. 2002). Rule
> 609(b), Ala. R. Evid., specifically provides that a conviction
> that is more than 10 years old is not admissible for
> impeachment purposes unless the trial court determines 'that
> the probative value of the conviction supported by specific
> facts and circumstances substantially outweighs its
> prejudicial effect.' Rule 609(b) has no application to the
> admission of collateral acts to establish motive."

Bedsole v. State, 974 So. 2d 1034, 1040 (Ala. Crim. App. 2006). Thus, the

prior bad act was not barred on the basis of the passage of 13 years

between the bad act and the charged offenses.

11

Williams next argues that the evidence that was presented concerning the prior 2002 conduct was inadmissible because, he says, it was all hearsay. Williams appears to contend that the only means of adequately proving the prior bad act was through the testimony of the 2002 victim.

> "In <u>Huddleston v. United States</u>, 485 U.S. 681, 687, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988), the United States Supreme Court 'expressly declined to require a level of proof of at least a preponderance of the evidence before the trial court could allow evidence of an extrinsic act to go before the jury.' <u>Ex parte Hinton</u>, 548 So. 2d [562] 567 [(Ala. 1989)]. 'Rather, "similar" acts evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.' <u>Huddleston</u>, 485 U.S. at 685, 108 S.Ct. at 1499."

<u>Akin v. State</u>, 698 So. 2d 228, 235 (Ala. Crim. App. 1996). See also <u>Ex parte Hinton</u>, 548 So. 2d 562 (Ala. 1989).

Other courts have held that a police officer's testimony concerning a prior bad act is sufficient for purposes of proof under Rule 404(b), Ala. R. Evid.

> "The defendant primarily argues that the trial court erred in finding 'clear proof' that the defendant intentionally fractured Gregory's leg. We have previously affirmed 'clear proof' determinations where the State provided the trial court with evidence firmly establishing that the defendant, and not some other person, committed the prior bad act. See [<u>State v. Simonds</u>, 135 N.H. [203,] 208, 600 A.2d [928,] 931 [(1991)]

12

(State proffered that victim would testify that defendant had sexually assaulted her on prior occasions); State v. Tarsitano, 134 N.H. 730, 734-35, 599 A.2d 474, 476-77 (1991) (defendant's friend testified that he participated in burglaries with the defendant); State v. Dalphond, 133 N.H. 827, 831, 585 A.2d 317, 320 (1991) (victim, who was member of defendant's household, described contents of pornographic material owned by the defendant); State v. Gruber, 132 N.H. 83, 89, 562 A.2d 156, 159-60 (1989) (State introduced cancelled checks, receipts, and telephone records to prove that defendant had engaged in prior bad acts); [State v.] Trainor, 130 N.H. [371] 374, 540 A.2d [1236] 1238 [(1988)] (police officer 'chronicled the events surrounding [a prior] indictment and linked the defendant to them'); State v. Barker, 117 N.H. 543, 545-46, 374 A.2d 1179, 1180 (1977) (police officer testified that defendant had previously engaged in drug transactions)."

State v. Michaud, 135 N.H. 723, 727-28, 610 A.2d 354, 356 (1992). See State v. Howard, 228 N.C. App. 103, 742 S.E. 2d 858 (2013); State v. Johnson, 568 N.W.2d 426 (Minn. 1997).

Captain Reach's testimony was based, in part, on his firsthand knowledge of the investigation of the 2002 charges because he was the investigating officer. The information concerning the investigation was not based on what someone had told him but on "what he knew from firsthand knowledge." Williams v. State, 627 So. 2d 985, 991 (Ala. Crim. App. 1991). See Rivers v. State, 689 So. 2d 990, 991 (Ala. Crim. App. 1996) ("The probation officer's testimony is hearsay unless the officer has firsthand knowledge of the facts in the probation report."). Thus, his

"statements [based on the firsthand knowledge] are by definition not hearsay." Stephens v. First Commercial Bank, 45 So. 3d 735, 738 (Ala. 2010). Also, Brenda Williams's testimony was based on official records maintained by DHR. See Jefferson Cnty. Dep't of Human Res. v. L.S., 60 So. 3d 308 (Ala. Civ. App. 2010).

Williams also argues that the circuit court erred in failing to give a limiting instruction on the use of the Rule 404(b) evidence. The record indicates that Williams did not request a limiting instruction at the charge conference. (R. 324-44.) Neither did Williams object at the conclusion of the circuit court's jury instructions. (R. 435.) As the Alabama Supreme Court stated in Ex parte Billups, 86 So. 3d 1079 (Ala. 2010):

> "In Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the United States Supreme Court stated that, when evidence of a defendant's other crimes, wrongs, or acts is introduced under Rule 404(b), Fed. R. Evid., 'the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.' 485 U.S. at 691–92, 108 S.Ct. 1496 (citing United States v. Ingraham, 832 F.2d 229, 235 (1st Cir. 1987) (emphasis added))."

86 So. 3d at 1085 (emphasis added). See also Windsor v. State, 110 So. 3d 876 (Ala. Crim. App. 2012). We have held there is no error in failing

14

to sua sponte give a limiting instruction on the use of evidence of prior bad acts when that evidence was not admitted for impeachment purposes but was admitted as substantive evidence of guilt. See Dotch v. State, 67 So. 3d 936 (Ala. Crim. App. 2010).

In this case, the evidence of prior 2002 charges was introduced to establish Williams's motive for the now-charged crimes and his "unnatural sexual desire for young girls." See Garner v. State, 977 So. 2d at 537. Based on the decisions cited above, we hold that the circuit court did not abuse its discretion in allowing evidence of Williams's 2002 rape charges. Therefore, Williams is due no relief on his claims regarding the admission of the Rule 404(b) evidence.

## II.

Williams next argues that the circuit court erred in its application of § 15-25-31, Ala. Code 1975. Specifically, he argues that it was a violation of the ex post facto clause for the circuit court to apply the current version of the statute rather than the version that was in effect at the time that the offenses occurred. Williams further argues that the 2016 change to the statute was a substantive change, not a procedural one.

15

The record indicates that Williams made a motion in limine seeking to have the version that was law at the time of the offenses, not the current version of § 15-25-31, Ala. Code 1975, applied. (C. 70.) This motion was discussed at a pretrial hearing. (R. 24-31.) The State argued that the change to §15-25-31 was procedural and that matters concerning procedure are governed by the law in effect at the time of trial, not at the time of the offense. (R. 31.) The circuit court agreed with the State and denied Williams's motion in limine. (R. 31.) During A.W.'s testimony the State introduced a video copy of the interview that was conducted with A.W. at the time that the charges were reported when A.W. was 11 years old. (R. 295.) Williams again objected.

Section 15-25-31, Ala. Code 1975, as amended effective May 11, 2016, provides:

> "An out-of-court statement made by a child under 12 years of age at the time the statement is made, or by a protected person as defined in Section 15-25-1, concerning an act that is a material element of any crime involving a physical offense, sexual offense, or violent offense, as defined in Section 15-25-39, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32 are met."

In 2015, this statute read:

"An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving child physical offense, sexual offense, and exploitation, as defined in section 15-25-39, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of section 15-25-32 are met."

"A law or rule relating merely to matters of procedure, and not depriving the accused of any substantial right, is not ex post facto."

Bighames v. State, 462 So. 2d 796, 797 (Ala. Crim. App. 1984). Discussing a procedural change versus a substantive change, this Court has stated:

"The laws regarding substantive and jurisdictional matters in effect at the time of the crime are applied because changes in those laws occurring after the offense may constitute ex post facto laws. See generally Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); Beazell v. Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925). In contrast, '[p]rocedural rules generally regulate trial proceedings, and these rules are not generally targeted as proscribing unwanted conduct [or otherwise falling within the definition of an ex post facto law]. Therefore, it does not seem unfair to require parties to comply with the rules of procedure applicable at the time in which they begin a new trial proceeding.' Mozee v. American Commercial Marine Service Co., 963 F.2d 929, 939 (7th Cir. 1992), quoted in Brown v. Amoco Oil Co., 793 F. Supp. 846, 851 (N.D. Ind. 1992).

"'[T]he word "procedural" ... refers to ... the procedures by which a criminal case is adjudicated, as opposed to ... the substantive law of crime.' Collins v. Youngblood, 497 U.S. at 45, 110 S.Ct. at 2720."

Prince v. State, 623 So. 2d 355, 362 (Ala. Crim. App. 1992).

17

The South Carolina Court of Appeals has addressed a similar issue regarding the admission of a child's statement. In State v. Bryant, 382 S.C. 505, 675 S.E.2d 816 (2009), that court stated:

"The purpose of an ex post facto clause is to prevent lawmakers from passing 'arbitrary or vindictive legislation.' Miller v. Florida, 482 U.S. 423, 429, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (citations omitted). An ex post facto clause also ensures that legislative enactments 'give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.' Weaver v. Graham, 450 U.S. 24, 28-29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). For a law to present an ex post facto violation, the law must (1) be retrospective and apply to events taking place prior to its enactment and (2) work to disadvantage the offender. State v. Huiett, 302 S.C. 169, 171, 394 S.E.2d 486, 487 (1990).

"The seminal case of Calder v. Bull, 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (1798), sets forth four general categories of law that are violative of the ex post facto clause of the United States Constitution.

"'1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

18

"Id. at 390.

"A change in the law does not run afoul of the ex post facto clause if it only affects a mode of procedure and does not alter 'substantial personal rights.' Huiett, 302 S.C. at 171, 394 S.E.2d at 487 (quoting Miller, 482 U.S. at 430, 107 S.Ct. 2446). Furthermore, in order for the ex post facto clause to be implicated, the statute at issue must be criminal or penal in purpose and nature. Id. at 172, 394 S.E.2d at 487. 'Even though a procedural change may have a detrimental impact on a defendant, a mere procedural change which does not affect substantial rights is not ex post facto.' Id. at 171-72, 394 S.E.2d at 487.

"The United States Supreme Court has determined changes in laws that made previously inadmissible evidence admissible did not violate the ex post facto clause. See Thompson v. Missouri, 171 U.S. 380, 386-87, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (finding application of law admitting previously inadmissible handwriting samples did not violate ex post facto clause); Hopt v. Utah, 110 U.S. 574, 589, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (holding admission of convicted felon's testimony, inadmissible at the time homicide was committed, did not violate ex post facto clause).

"Other jurisdictions that have considered the admission of hearsay statements of child victims have reached the same conclusion. See Hall v. Vargas, 278 Ga. 868, 608 S.E.2d 200, 202 (2005) (holding statutory change permitting state to introduce additional evidence in the form of hearsay statements attributed to child victim did not present an ex post facto violation); Villalon v. State, 805 S.W.2d 588, 591-92 (Tex. Ct. App. 1991) (finding statutory amendment changing rule of evidence to eliminate hearsay as a bar to the admissibility of certain category of outcry statements did not violate the ex post facto clause); Glendening v. State, 503 So. 2d 335, 337-38 (Fla. Dist. Ct. App. 1987) (finding no ex post facto violation when statutory amendment 'did not increase

19

the punishment or deprive [defendant] of a defense' and 'the statute had no effect upon whether [defendant] committed the crime but simply authorized the introduction of additional evidence to demonstrate his guilt').

"The admission of the previously inadmissible videotaped interviews did not change the quantum of evidence required to convict Bryant nor did it change the elements of the crime. Once the jury determined Bryant's guilt, the admission of the videotape did not alter or effect the punishment to which he was subject. Rather than being penal in nature, section 17-23-175 deals with procedural, evidentiary matters. Consequently, we do not believe this addition to the statutory scheme allowing for such out-of-court statement falls into one of the four categories set forth in <u>Calder</u>."

State v. Bryant, 382 S.C. at 510-12, 675 S.E.2d at 819-20.

We agree with the South Carolina Court of Appeals. The change to § 15-25-31, Ala. Code 1975, was procedural in nature and not a substantive change in the law. The circuit court did not err in applying the statutory procedural law at the time of trial. See Prince v. State, supra. For these reasons, Williams is due no relief on this claim.

## III.

Last, Williams argues that the circuit court erred in refusing to give his requested jury instruction on unanimity. Specifically, he argues that the circuit court erred in refusing to instruct the jury that it could find "[Williams] guilty only if it unanimously agree[d] that he committed all

the incidents described by the victim." (Williams's brief at p. 29.) He relies on the Alabama Supreme Court case of R.A.S. v. State, 718 So. 2d 117 (Ala. 1998), to support his argument. He asserts that the evidence presented at trial was "generic and ambiguous as to specific incidents on specific dates" and that, therefore, an unanimity instruction should have been given by the court. (Williams's brief, p. 30.)

The record indicates that at the charge conference, Williams requested a jury instruction on unanimity. (R. 324-44.) Also, at the conclusion of the court's jury instructions, defense counsel objected to the court's failure to give its requested instruction and the following occurred:

> "[Defense counsel]: … [T]he law says in this type of case where there are allegations of multiple offenses in over a period of time that when the State elects to -- when -- when the State elects to prosecute those cases that each individual juror must determine that every one of these sexual acts occurred, otherwise your verdict must be not guilty. That is supported by lots of case law.
>
> "THE COURT: This seems to say that if the jury determines that one of these alleged sex acts didn't occur, they must find the defendant not guilty. I don't think that is an accurate reflection of the law. Even in nine separate charges, the jury could very well determine that one of these or two of these didn't happen but the other seven did.
>
> "...

21

"[Prosecutor]: Your Honor, the State would say as Your Honor already pointed out. We charged nine different offenses. This is more applicable if we charged one count of rape and there were multiple rapes over a period of time. But the State elected to charge just one count of rape, is where this is more applicable.

"In this case, we charged for the individual -- she said she remembers four or five different times. We alleged the sodomy, the rape and the three counts of sexual abuse of a child less than 12. We have already broken that down. Like Your Honor said, if they want to decide some of those happened and some of those didn't, they already have that option because we charged multiple indictments on the different acts. I don't think this is applicable to this case. We did charge, you know, for multiple acts. We charged different indictments. We didn't elect to travel under one sexual abuse."

(R. 332-34.)

In R.A.S., the Alabama Supreme Court held:

"In cases, such as this one, that involve both generic and specific evidence, where evidence of multiple culpable acts is adduced to prove a single charged offense, jury unanimity must be protected. Therefore, in such a case, the defendant is entitled either to have the State elect the single act upon which it is relying for a conviction or to have the court give a specific unanimity instruction. If the State chooses not to elect the specific act, the trial court must instruct the jury that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, thereby assuring a unanimous verdict on one criminal act. Cf. State v. Petrich, 101 Wash. 2d 566, 571, 683 P.2d 173, 178 (1984) (where, in a factually similar case, the Washington Supreme Court required either that the State make an election or that the trial judge provide an unanimity instruction to the jury). See also, People v. Aldrich, 849 P.2d 821, 825 (Colo. App.

22

> 1992) (where the court held that the defendant's right to a unanimous jury was ensured because, (1) 'although the trial court denied the defendant's pre-trial motion to compel an election, at the close of the trial, the trial court did compel the prosecutor to elect the specific incidents of conduct upon which it relied,' (2) 'the jury ultimately was instructed as to the specific incidents upon which the charges were based,' and (3) the jury 'was also given a unanimity instruction' (emphasis omitted))."

R.A.S., 718 So. 2d at 122 (footnote omitted).

First, R.A.S. is factually distinguishable from this case. The Court in R.A.S. specifically noted that the question presented in that case dealt with a resident sex offender who had unfettered access to the child victim. Here, Williams did not live with the victim, did not have a key to her residence, and did not have unfettered access to the victim. Also, the evidence here was specific -- A.W. testified to separate acts involving Williams.

Second, as the State argues in brief, if there was any error, that error was harmless based on this Court's holding in R.L.G. v. State, 712 So. 2d 348 (Ala. Crim. App. 1997). In R.L.G., this Court stated:

> "Although the trial court erred, we conclude that it is harmless error. In [People v.] Jones, [51 Cal. 3d 294, 270 Cal, Rptr. 611, 792 P.2d 643 (1990),] the court observed that '[s]ome cases found harmless any error in failing either to select specific offenses or [to] give a unanimity instruction, if the record indicated the jury resolved the basic credibility

23

dispute against defendant and would have convicted the defendant of any of the various offenses shown by the evidence to have been committed.' 51 Cal. 3d at 307, 270 Cal. Rptr. at 617, 792 P.2d at 649 (emphasis in original; citing People v. Moore, 211 Cal. App. 3d 1400, 1415-16, 260 Cal. Rptr. 134 (1989); People v. Winkle, 206 Cal. App. 3d [822,] 828–30, 253 Cal. Rptr. 726[, (1988)]; People v. Schultz, 192 Cal.App.3d 535, 539-40, 237 Cal. Rptr. 513 (1987); People v. Deletto, 147 Cal. App. 3d 458, 466, 470-73 & n. 10, 195 Cal. Rptr. 233 (1983), cert. denied, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984)). For example, in Winkle, the victim testified that the defendant, her uncle, had molested her regularly each week; the prosecution made no election and no unanimity instruction was given. The court concluded that no prejudice resulted. Because the defendant made only a weak attempt to assert an alibi defense, the ultimate question for the jury was the defendant's credibility and the verdict necessarily implied that the jury unanimously believed the victim.

"....

"As we have already noted, the present case hinged solely on credibility, i.e., the defense was designed to show that none of the incidents occurred. There was absolutely no rational basis by which the jury could have found that the appellant committed one of the incidents but not the others. Any juror believing that one incident took place would have unquestionably believed that all the incidents took place. Thus, we can say that no rational juror could have had a reasonable doubt as to any of the incidents alleged. By returning guilty verdicts, the jurors must necessarily have unanimously rejected the appellant's defense and, by believing the victim, unanimously found that all the incidents occurred. We must conclude that, under these circumstances, the jury in fact unanimously agreed on the act forming the basis of the verdicts. Moreover, the appellant's rights to notice of the charges against him, to the opportunity to formulate a defense, and to be convicted only upon sufficient

24

proof were not injuriously affected. We conclude to a certainty that, upon the peculiar circumstances of this case, the trial court's failure to give a specific unanimity instruction, necessitated by the prosecution's inability to elect, was harmless error. Compare Ex parte Curry, 471 So. 2d 476, 479 (Ala.1984) (in a case not addressing an election issue, where the jury was not instructed generally that it must reach a unanimous verdict in order to convict or acquit, the court stated that 'the unanimous-verdict is so fundamental to the rights of the defendant that an omission to charge on that requirement must necessarily be prejudicial' because 'one member of the jury could [have] alter [ed] the ultimate verdict had they been instructed')."

R.L.G., 712 So. 2d at 368-69.

In this case, defense counsel's entire closing argument consisted of attacking A.W.'s credibility. The jury's guilty verdict on all nine counts meant that "the jurors must necessarily have unanimously rejected the appellant's defense and, by believing the victim, unanimously found that all the incidents occurred." R.L.G., 712 So. 2d at 369. Accordingly, any failure to give an unanimity instruction was harmless based on this Court's decision in R.L.G. For these reasons, Williams is due no relief on this claim.

For the above stated reasons, we affirm Williams's convictions.

AFFIRMED.

25

McCool, J., concurs. Windom, P.J., and Minor, J., concur in the result. Cole, J., dissents, with opinion.

COLE, Judge, dissenting.

I respectfully dissent from this Court's opinion affirming Michael Carvese Williams's convictions. I believe the trial court, over numerous objections by Williams's trial counsel, improperly allowed the jury to consider inadmissible hearsay evidence regarding a prior rape allegedly committed by Williams. This was reversible error.

As the main opinion indicates, the State filed a pretrial notice of its intent to introduce evidence pursuant to Rule 404(b), Ala. R. Evid., of "incidents of [Williams], being an adult, engaging in sexual intercourse with minors around the age of 11 or 12 years old." (C. 51.) Williams filed a motion in limine seeking to exclude evidence of his prior adjudication as a youthful offender and to exclude evidence of the acts that resulted in that adjudication. At the pretrial hearing on this issue, the State initially indicated that it intended to present evidence of the "conduct" underlying the youthful-offender adjudication, not the adjudication itself, through means such as a "statement by party opponent, [Williams's] admissions to other people about the charges, and of course witness testimony that have been there and have firsthand knowledge of the facts." (R. 7.) The trial court then asked if the State would also have "a police investigator

27

testify that they did an investigation of the defendant's background and found this other case and what happened?" (R. 7.) The prosecutor responded in the affirmative. As the main opinion notes, the State did not call the victim of the previous rape to testify against Williams. Rather, the State called Brenda Williams ("Brenda"), a supervisor of child abuse and neglect at the Department of Human Resources ("DHR") and Jacob Reach, a captain with the Jefferson County Sheriff's Department, to testify about the previous conduct based upon their investigation of the matter.

I agree with the main opinion, and with the trial court, that evidence of Williams's prior sexual assault was potentially admissible to prove his motive for the crimes charged in this case because it was important to establish his "unnatural sexual desire for young girls." Garner v. State, 977 So. 2d 533, 537 (Ala. Crim. App. 2007). Yet, his motive had to be proven through admissible testimony and evidence. Although Williams argues on appeal that evidence of his prior acts occurred approximately 13 years before the allegations in this case and were not admissible, in any form, the main opinion correctly notes that "[t]he decision whether to allow or not to allow evidence of collateral

28

crimes or acts as part of the State's case-in-chief rests within the sound discretion of the trial judge." Blanco v. State 515 So. 2d 115, 120 (Ala. Crim. App. 1987). When trial courts exercise this discretion and allow the introduction of evidence of prior bad acts, this Court will not overturn that decision absent a clear abuse of discretion. Yet, prior bad acts can be proven only though the introduction of admissible evidence. As Williams argued at trial and argues on appeal, the evidence introduced by the State in this case was inadmissible hearsay evidence.

"'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ala. R. Evid. "Hearsay is not admissible except as provided by the Alabama Rules of Evidence or by other rules adopted by the Supreme Court of Alabama or by statute. Ala. R. Evid. 802." James v. State, 723 So. 2d 776, 779 (Ala. Crim. App. 1998). As previously noted, the testimony in question was elicited from Brenda and Captain Reach over defense counsel's objections. As the main opinion states, Brenda testified that the DHR central registry records indicated that in 2002, approximately four years before Brenda started working for DHR and approximately 13 years before the incidents

underlying the current allegations occurred, that Williams "was indicated for sexual abuse, sexual penetration of a child" who was 12 years old at the time. (R. 134-135.) On re-direct examination, again over Williams's hearsay objection, Brenda testified that "based on our history, we saw that Michael Williams and [others] -- I think about two of them. I can't remember. They gang raped a child that was 12 years old." (R. 168." Not only did Brenda testify about the allegations, but she was also allowed to testify that, when she said the charges were "indicated," she meant that DHR representatives "have gathered enough information to say, okay, based on what we gather, all or evidence, this is true." (R. 121.) Captain Reach testified that he investigated the prior allegations and that, after "setting up [an] interview with the victim and reaching out to get statements from Michael Williams and others involved," "[they] brought the individuals in and interviewed them ... offered them polygraph examinations" and subsequently brought juvenile rape charges against Williams. (R. 215-217.)

Although the main opinion asserts that "Captain Reach's testimony was based, in part, on his firsthand knowledge of the investigation of the 2002 charges," ___ So. 3d ___, and that "[t]he information concerning the

30

investigation was not based on what someone had told him," ___ So. 3d ___, the record reveals otherwise. Captain Reach testified that, after interviewing the offenders and offering them polygraph examinations, he "brought charges against Michael Williams for rape second degree." (R. 215.) However, anything Captain Reach learned from the interviews or polygraph examinations would not have been based on "firsthand knowledge" but, rather, on information he received from others, which is, by definition, hearsay, as Williams argued below and argues on appeal. Although an incriminating statement made by Williams would have been a nonhearsay statement "against a party" under Rule 801(d)(2), Ala. R. Evid., Captain Reach never expressly testified whether Williams was one of the individuals who gave a statement, nor did he testify to the contents of any statement allegedly given by Williams regarding the earlier rape. In sum, Captain Reach provided no nonhearsay testimony, and there is no evidence that he witnessed the prior bad acts allegedly committed by Williams.

In relation to Brenda's testimony from DHR records, the main opinion correctly notes that DHR records containing hearsay were also used in Jefferson County Department of Human Resources v. L.S., 60 So.

31

3d 308 (Ala. Civ. App. 2010). But the use of similar records in another case does not make the use of those records in this case appropriate. L.S. is a case involving the termination of a mother's parental rights in which neither party raised any issues regarding the improper admission of hearsay evidence. Thus, L.S. does not sufficiently support a holding that testimony from DHR records was properly admitted into evidence in this case because, unlike in L.S., the issue here was preserved and raised on appeal by Williams.

Clearly, testimony regarding information contained in DHR records can be admissible, but information in DHR records is not admissible merely because it is included in DHR's official records. This issue was addressed in Y.M. v. Jefferson County Department of Human Resources, 890 So. 2d 103 (Ala. Civ. App. 2003), in which a party objected to the admission of hearsay evidence gleaned from DHR records. Y.M. involved the termination of parental rights, and the Court of Civil Appeals held that "to the extent that decisions of this court state or imply that a written report containing hearsay may be received at the adjudicatory phase of a parental-rights-termination proceeding so long as the author of the report is present and available for cross-examination, they are

erroneous." Id. at 112. The Court of Civil Appeals in Y.M. reversed the trial court because "[h]earsay [from DHR records] was erroneously admitted." Id. at 114. T.C. v. Cullman County Department of Human Resources, 889 So. 2d 281 (Ala. Civ. App. 2004), and E.W. v. Jefferson County Department of Human Resources, 872 So. 2d 167 (Ala. Civ. App. 2003), are two other cases in which the Court of Civil Appeals held that hearsay from DHR records was improperly allowed into evidence, but in both of those cases the judgments of the trial courts were affirmed because the error was held to be harmless.

With regard to the Captain Reach's testimony, the main opinion cites State v. Michaud, 135 N.H. 723, 610 A. 2d 354 (1992), for the proposition that "[o]ther courts have held that a police officer's testimony concerning a prior bad act is sufficient for purposes of proof under Rule 404(b), Ala. R. Evid." ___ So. 3d at ___. Yet Michaud did not involve an argument that hearsay had been improperly admitted, and most of the cases cited in Michaud involved witnesses, including police officers, who were testifying about prior acts that they had personally observed. Those cases did not raise issues concerning the admissibility of hearsay evidence; therefore, they do not support an argument that the hearsay

33

testimony of Brenda and Captain Reach was properly admitted into evidence. Likewise, State v. Howard, 228 N.C. App. 103, 742 S.E. 2d 858 (2013), which is cited in the main opinion, involved evidence from a police officer who personally "saw [the] defendant flee, tossing a black semi-automatic handgun" and the officer chased him until he caught the defendant and arrested him. Id. at 107. Thus, Howard involved testimony about what an officer personally witnessed, not hearsay testimony. As I noted previously, I disagree with the main opinion's assertion that Captain Reach's testimony was based upon his personal observations and his firsthand knowledge; therefore, Howard does not apply to this case. Furthermore, State v. Johnson, 568 N.W. 2d 426 (Minn. 1997), does not support this Court's holding that the evidence presented by Captain Reach and Brenda was admissible in that Johnson affirmed the trial court's judgment because the prior-act evidence was relevant, not because it was admissible over a hearsay objection.

This Court has held on numerous occasions that

"'"[o]rdinarily, the reports of investigating officers are not admissible in evidence. Nettles v. Bishop, 289 Ala. 100, 266 So. 2d 260 (1972). … They are deemed hearsay and do not fall within the 'business records' exception to that exclusionary rule. Pike Taxi Co v. Patterson, 258 Ala 508, 63 So. 2d 599 (1952). Therefore, to be admissible, that portion of

34

the report sought to be introduced must come within the ambit of some other exception to the hearsay rule." Dennis v. Scarborough, 360 So. 2d (Ala. 1978).'"

James, 723 So. 2d at 780. Without testimony from the alleged victim or an individual with firsthand knowledge of the prior rape, the trial court erred in allowing Captain Reach to testify about the prior rape investigation, the polygraph examinations, and Williams's arrest in that case.

Although the main opinion addresses this issue by holding that the testimony from Brenda and Captain Reach was admissible and properly admitted, the State merely argues on appeal that, "[i]f the trial court erred in admitting this testimony, any error was harmless." (State's brief, p. 12.) The State correctly notes that

> "[n]o judgment may be reversed or set aside, … on the ground of … the improper admission or rejections of evidence, … unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."

Rule 45, Ala. R. App. P. This Court has held that

> "'[w]hether the improper admission of evidence of collateral bad acts amounts to prejudicial error or harmless error must be decided on the facts of the particular case.'

35

R.D.H. v. State, 775 So. 2d 248, 254 Ala. Crim. App. 1997); Hobbs v. State, 669 So. 2d 1030 (Ala. Crim. App. 1995). The standard for determining whether error is harmless is whether the evidence in error was "harmless beyond a reasonable.' Schaut v. State, 551 So. 2d 1135, 1137 (Ala. Crim. App. 1989), citing Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)."

Hunter v. State, 802 So. 2d 265, 270 (Ala. Crim. App. 2000).

"'[T]he reviewing court must determine whether the "improper admission of the evidence … might have adversely affected the defendant's right to a fair trial, and before the reviewing court can affirm a judgment based upon the "harmless error" rule, that court must find conclusively that the trial court's error did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant.'"

Towles v. State, 168 So. 3d 133, 140 (Ala. 2014) (quoting Ex parte Crymes, 630 So. 2d 125, 126 (Ala. 1993) (emphasis omitted)).

A review of the record indicates that the trial court's error in admitting the hearsay testimony was not harmless. Only one individual witnessed the acts in question in this case -- the victim A.W. She agreed that she initially denied that Williams had sexually assaulted her. There was no DNA evidence or other physical evidence to corroborate A.W.'s version of the events. There was also testimony that A.W. had lied in the past and that her mother had previously accused A.W. of lying about the rape allegedly committed by Williams. The State's case was not

overwhelmingly strong, but the inadmissible hearsay about Williams's prior acts was incredibly damning. Inadmissible testimony that Williams and others "gang raped" a 12-year-old girl and that he was arrested for the offense was extremely prejudicial.

> "'"The basis for the [exclusionary] rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of jurors."' Ex parte Cofer, 440 So. 2d 1121, 1123 (Ala. 1983), quoting C. Gamble, McElroy's Alabama Evidence § 69.01(1) (3d ed. 1977), also quoted in Hobbs v. State, 669 So. 2d 1030, 1032 (Ala. Crim. App. 1995)."

Ex parte Casey, 889 So. 2d 615, 621-22 (Ala. 2004).

The evidence of Williams's prior rape case was admitted through inadmissible hearsay testimony. The testimony was extremely prejudicial to Williams, and its admission was not harmless beyond a reasonable doubt. Therefore, I would reverse Williams's convictions, and I would remand this cause for a new trial. Thus, I respectfully dissent.

37